831 So.2d 808 (2002)
Annie EVANS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-1164.
District Court of Appeal of Florida, Fourth District.
December 11, 2002.
*809 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Richard E. Doran, Attorney General, Tallahassee, and Sandra Braverman, Assistant Attorney General, Fort Lauderdale, for appellee.
FARMER, J.
Defendant was convicted of battery on a law enforcement officer and disorderly conduct. She argues error in the trial court's denial of her request for a jury instruction on the lesser included offense of attempted battery and in interrupting the state's cross-examination of the defendant to suggest that the state inquire into her immigration status. Because these issues alone require a new trial, we do not address any other issues.
Briefly the facts are that defendant was directed by an officer on special patrol at the Fort Lauderdale-Hollywood International Airport to move her vehicle from the curbside where it was parked. Owing to the holiday and threats to the nation's airports, the officer had received strict instructions to prohibit all curbside parking.
After the defendant exited her car, the officer told her several times that for security reasons she could not park there and that she could circle around the airport or park in the garage and walk across. Defendant claimed that she needed to use the bathroom and asked for five minutes; she told the officer that her mother, also in the car, could move it. Upon discovering that the mother could not drive, the officer again instructed defendant to move her vehicle.
Defendant responded by yelling profanities at the officer, drawing attention from onlookers. When the officer asked her if she wanted to go to jail that night, she shoved him in the chest, telling him to move out of her way. The officer then placed her arms in a police arm-bar and told her she was under arrest for battery on a law enforcement officer. Defendant, as well as her mother and son, all testified that the defendant did not shove the officer.
While defendant was being restrained in the arm-bar, another officer arrived. As he and the first officer attempted to move defendant to the police car, she "plopped to the ground" in the loading zone. The second officer testified that people were watching these events, saying "it was loud enough for people to notice, turn, and look." The two officers then moved defendant to the police car where she sat down, with her feet outside the vehicle. When the officers asked her to put her feet inside the car, she tried to negotiate. After several requests, the first officer tried to put her feet in the car by himself, but when he did so, she kicked him twice in the gunbelt area. The officer then pepper sprayed defendant, and she subsequently put her feet in the vehicle. A third officer, who witnessed the defendant being brought to the police car and then pepper sprayed, never saw any physical contact between defendant and the first officer, although he did see defendant kicking. Defendant's mother and son said they did not see what occurred at the police car.
During the state's cross-examination of defendant, the prosecutor asked her whether she "decided [she was] just gonna park the car where [she] wanted to," to which she responded: "[i]t was not like *810 that at all. I'm a very law abiding citizen. It was not like that at all." At that point, the trial judge interrupted the trial without any objection or request by anyone, for a side-bar conference to inquire about questioning defendant's immigration status. Previously the trial court had ruled her immigration status inadmissible because its prejudice outweighed its probative value. As a result of the trial judge's suggestion, and over defense counsel's continuing objections, the court permitted the state to question defendant about her immigration status. She admitted she was a citizen of Jamaica, and that she had overstayed her visa.
The trial court denied defense counsel's request that the court instruct the jury on the lesser included offense of attempted battery. The court ruled that the defendant's testimony did not support giving the lesser included offense instruction. The jury found defendant guilty of both counts as charged.
Defendant contends that the trial court erred in denying her request for a jury instruction on the lesser included offense of attempted battery because she and her family testified that she did not shove the officer, and one deputy testified that she saw the defendant kicking but did not see her make any physical contact with the first officer. Florida Rule of Criminal Procedure 3.510 provides:
"On an indictment or information on which the defendant is to be tried for any offense the jury may convict the defendant of:
(a) an attempt to commit the offense if such attempt is an offense and is supported by the evidence. The judge shall not instruct the jury if there is no evidence to support the attempt and the only evidence proves a completed offense; or
(b) any offense that as a matter of law is a necessarily included offense or a lesser included offense of the offense charged in the indictment or information and is supported by the evidence. The judge shall not instruct on any lesser included offense as to which there is no evidence."
Thus, "an instruction on a permissive lesser included offense should be precluded only where `there is a total lack of evidence of the lesser offense.'" Amado v. State, 585 So.2d 282, 282-83 (Fla.1991) (citing In re Use by Trial Courts of Standard Jury Instructions, 431 So.2d 594, 597 (Fla.), modified, 431 So.2d 599 (Fla.1981)). Refusing to instruct the jury on the attempt to commit the offense charged, where the evidence does not point only to a completed offense, deprives the defendant of the opportunity for a "jury pardon," rendering such a failure reversible error. F.N. v. State, 745 So.2d 1149, 1150 (Fla. 4th DCA 1999).
Moreover, although there is often a measure of discretion involved in a request for the trial judge to give a proposed jury instruction, as one court has explained:
"a defendant is entitled to have his jury instructed on the law applicable to his theory of defense if there is any evidence presented supporting such a theory, even if the only evidence supporting the defense theory comes from the defendant's own testimony." [c.o.]
Bozeman v. State, 714 So.2d 570, 572 (Fla. 1st DCA 1998). In other words, if there is evidence to support the requested instruction, then defendant has a right to have the jury so instructed. The refusal to give an instruction where evidence supports it is legal error.
Here, defendant argues that there was evidence to support the lesser included offense of attempted battery. We agree. Although the officers testified that defendant *811 pushed the first officer and kicked him, there was contrary testimony by defendant, her mother and her son to the effect that she did not push or kick the deputy. Moreover, one officer testified that she could not see whether defendant actually made physical contact with the first officer at the police car, though she did see the defendant "kicking her feet." In light of this testimony, the trial judge should have given the instruction on the lesser included offense of attempted battery. The failure to do so constitutes reversible error, requiring a new trial on the battery charge.
Defendant also maintains that the trial judge improperly assisted the prosecution by suggesting an inquiry into immigration status. The state responds that the trial judge merely sought to clarify and readdress an issue previously decided.[1] We disagree.
Florida law expressly prohibits a trial judge from stepping away from the appearance of neutrality to become an advocate for either party. J.F. v. State, 718 So.2d 251, 252 (Fla. 4th DCA 1998); Chastine v. Broome, 629 So.2d 293 (Fla. 4th DCA 1993). As we said in Chastine: "When the judge enters into the proceedings and becomes a participant, a shadow is cast upon judicial neutrality so that disqualification is required." 629 So.2d at 295. In other words, "[o]bviously, the trial judge serves as the neutral arbiter in the proceedings and must not enter the fray by giving `tips' to either side." Chastine, 629 So.2d at 295; see also Asbury v. State, 765 So.2d 965, 966 (Fla. 4th DCA 2000) (holding that the trial judge erred in becoming an active participant by prompting the state to present evidence).
In this case, the trial court interjected himself into the state's cross-examination of defendant to suggest an inquiry into her immigration status after she told the court she was a law abiding citizen. This court recently addressed an indistinguishable circumstance in Lee v. State, 789 So.2d 1105 (Fla. 4th DCA 2001). There the prosecutor asked the state's eyewitness about the defendant's tattoos, but did not ask the witness to identify them on the defendant's forearm in court. When the prosecutor finished examining the witness, the trial judge suggested that the prosecutor might want to pursue this line of inquiry and, after the side-bar, the prosecutor did in fact do so. This court found that the trial judge's interjection into the trial proceedings was both improper and prejudicial:
"It is apparent from the record that the trial court departed from its position of neutrality by prompting the prosecutor to have the witness identify the scar and tattoos on appellant's forearm in front of the jury. But for the court's prompting during the sidebar conference, the prosecutor would not have embarked on that line of questioning. Based on these facts, the trial court reversibly erred because it became an active participant by `prompting the State' to present evidence of appellant's tattoos and scars."
Id. at 1107.
We conclude that the trial judge impermissibly interjected himself into the proceedings. If the defendant's remark that she was a law abiding citizen did, in fact, open the door to questioning about her immigration status, then it was for the state to appreciate that fact and bring the *812 matter to the trial court's attention so that it could be pursued in spite of the previous ruling. It was not the role of the trial judge to do so. We therefore also base our reversal on this ground as well.
REVERSE.
GUNTHER and MAY, JJ., concur.
NOTES
[1] Initially, the trial judge ruled questioning about the defendant's immigration status inadmissible. The state contends that when the defendant herself "opened the door" by referring to herself as a law abiding citizen, the trial judge's interjection was only to inform the state that this evidence was now admissible.