931 So.2d 187 (2006)
Stefan A. ARMSTRONG, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-1884.
District Court of Appeal of Florida, Fifth District.
June 9, 2006.
*189 David F. Hoffmann, of Hoffmann Hoffmann, P.A., South Daytona, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Wesley Heidt and Pamela J. Koller, Assistant Attorneys General, Daytona Beach, for Appellee.
SHARP, W., J.
In this appeal from his conviction and sentence for robbery, Armstrong contends the trial court committed reversible error by: 1) allowing the state to introduce into evidence a portion of a video-taped statement he made to law enforcement while being investigated in an unrelated case, 2) refusing the defense request for a jury instruction on attempted robbery, and 3) striking a defense alibi witness. We agree with Armstrong that the court erred in admitting his statement to law enforcement and reverse on that ground. We find no merit to the remaining issues but address those issues in order to assist the trial court on remand.
Armstrong was charged with robbing Jessica Goerke of her wallet on December 6, 2004. Prior to trial, the defense filed a notice of alibi in which it claimed that Armstrong was with John Reynolds and Lisa Dutka at the time. The state moved to strike the notice as insufficient because it failed to state the location where Armstrong was at the time of the offense, as required by Florida Rule of Criminal Procedure 3.200.
At the hearing on this motion, defense counsel conceded the notice did not comply with the rule but argued the failure to state the location was an unintentional omission. Defense counsel then put on the record that Armstrong was at an address in Daytona Park Estates at the time of the offense.
The judge hearing the motion denied the state's motion to strike but ordered that both alibi witnesses be made available that afternoon for deposition by the state. Defense counsel agreed to do so.
The defense produced Reynolds and the state took his deposition. However, the defense failed to produce Dutka.
At the start of the trial, the state moved to exclude Dutka who had appeared in court. The trial judge struck her as a witness because the defense failed to produce her the prior day and the state did not have an opportunity to talk to her. The trial then proceeded.
Jessica testified that she was accosted by a man in the driveway of her home. The man grabbed her arm and flung her around. He told her to give him all the money she had.
Jessica told the man she had no money, that she does not carry cash. The man told her to "prove it." As Jessica was getting her wallet from her purse, the man grabbed her hair. Jessica was shaking so badly she could not open the wallet. The man yanked the wallet from her and looked through it. Jessica's hands were free and she hit the panic button on her keychain, which set off the alarm on her vehicle.
The man dropped the wallet, slapped Jessica across her face and ran away. Jessica ran inside the house and called 911. *190 Jessica's wallet was found in the driveway but no fingerprints were obtained from the wallet. Law enforcement took Jessica to view a suspect but he was not identified as the assailant.
Deputy Brian Henderson testified that Armstrong lived in the general vicinity of Jessica's home in the Daytona Park Estates area. About one month after this crime was committed, Henderson interviewed Armstrong in connection with another robbery in November 2005. It involved a shooting. Over defense objection, the state was allowed to introduce the following statement made by Armstrong during that interview:
I will f___ with people I don't know, I will steal somebody's s___, but I ain't never hurt nobody in my f______ life, man. I have never hurt nobody.
Based on the interview, Henderson obtained a photo line-up that included Armstrong and showed the photos to Jessica. Jessica almost instantly identified Armstrong. She also identified Armstrong as her assailant at trial.
Reynolds testified for the defense. He said that Armstrong had been living with him in his Daytona Park Estates home, at the time this crime was committed. On the day of the robbery, he, Armstrong and Dutka were home all day, just sitting around, playing video games. Jessica's home is about a half-mile or more away.
The jury found Armstrong guilty as charged. Armstrong was adjudicated guilty and sentenced as an habitual offender to 30 years in prison.

I. STATEMENT TO LAW ENFORCEMENT
Armstrong contends the trial court erred in admitting the statement he made to law enforcement during the investigation of an unrelated robbery. Armstrong argues the statement was similar fact evidence which violated the Williams[1] rule because there was no indicia of similarity other than both crimes involved stealing. It was also improper character evidence offered solely to demonstrate his bad character and that he acted in conformity with his bad character on this particular occasion. Any probative value was far outweighed by the danger of unfair prejudice.
In response, the state contends that Armstrong failed to object on improper character or Williams rule grounds and thus these claims have not been preserved for review. However, the state made no effort to present this statement as Williams rule evidence. It failed to provide the defense with prior notice, and the jury was not given a Williams rule charge, as is required. Delgado v. State, 573 So.2d 83 (Fla. 2nd DCA 1990). Nor did it argue the statement constituted proper Williams rule evidence. Finally, the state argues that any prejudice at trial did not substantially outweigh the probative value of the evidence.
We find that Armstrong adequately preserved his objections to admission of this statement. At the start of trial, defense counsel told the court:
The Defense submits to the Court if the Court allows Ms. Taylor, the Office of *191 the State Attorney, to bring those statements in here, they would be collateral and would be unfairly prejudicial to the defendant in this case. They're irrelevant to the crime at issue, therefore, we're asking it to be excluded.
Before Henderson testified, the court reviewed the tape and heard arguments of counsel. After listening to the tape, defense counsel argued to the court:
They're clearly talking about the armed robbery on November 19th, and Mr. Armstrong is defending himself about that crime. And he is emotional in doing so, and distinguishing he would not hurt somebody. For the state to think, well, that makes him, that makes that statement fair game for all crimes not dealing with a shooting, not dealing with any type of injury on that level, is irrelevant because it lacks context and its probative value is far outweighed by the prejudicial value.
In resolving the merits of this issue, we find instructive several cases involving similar statements. They all involve the defendants' admissions of bad character or acts unrelated to the criminal prosecution in which the statements were admitted. For example, in Mims v. State, 872 So.2d 453 (Fla. 2nd DCA 2004), the trial judge admitted the defendant's statement to a deputy that "I haven't sold dope in at least four months, so it couldn't have been me," in his trial on drug charges. The Second District concluded this statement was unfairly prejudicial and should not have been admitted because it served only to establish the defendant's propensity to sell drugs.
The Second District recognized that its review of the trial judge's ruling on the admissibility of the defendant's statement was for an abuse of discretion. Nevertheless, the court noted the trial judge should exclude modestly relevant evidence when the danger of unfair prejudice from its admission substantially outweighs its probative value. The Second District also rejected the state's contention that the error was harmless because another deputy testified that the defendant was the person who sold him drugs during an undercover operation.
In Delgado v. State, 573 So.2d 83 (Fla. 2nd DCA 1990), the Second District concluded the trial judge in a murder case had erred in admitting testimony from the defendant's girlfriend that the defendant used drugs and boasted that he had killed ten men. The court ruled that the defendant's statement that he had previously killed ten men was not relevant to whether he had deliberately killed the victim in the case at hand. There also was no evidence that his statement was true, and any probative value of this testimony was far outweighed by the obvious danger of unfair prejudice. Likewise, the defendant's involvement with drugs was not relevant to the shooting of the victim. The court could not say beyond a reasonable doubt that the error did not affect the verdict and so rejected the state's harmless error argument.
In reaching its decision, the Second District relied on Jackson v. State, 451 So.2d 458 (Fla.1984). In Jackson, the Florida Supreme Court ruled that a defendant's boast to a witness that he was "a thoroughbred killer" and evidence that he brandished a gun while making this statement to the witness was irrelevant and inadmissible in his trial for an unrelated murder. The testimony showed the defendant may have committed an assault on the witness but that crime was irrelevant. Likewise the "thoroughbred killer" statement may have suggested the defendant had killed in the past, but the boast neither proved that fact, nor was that fact relevant to the case at hand. The court *192 said, "[t]he testimony is precisely the kind forbidden by the Williams rule and section 90.404(2)." 451 So.2d at 461.
In Carter v. State, 687 So.2d 327 (Fla. 1st DCA 1997), the First District reversed the defendant's conviction for lewd and lascivious assault on a child less than 16 years of age where the judge had admitted the defendant's statement: "if you're old enough to bleed, you're old enough to breed." The court concluded this was not Williams rule evidence but rather was a statement of belief and did not involve past behavior, in the form of other crimes, wrongs or acts.
The court characterized this evidence as evidence of the defendant's bad character, presented by the prosecution to show that the defendant acted in conformity with that bad character at a particular time. That the prosecutor offered the statement solely to show that the defendant was the sort of person who would molest a young girl was established during his closing argument. The prosecutor told the jury the statement "means that he feels like it's all right to have sex with underage girls." 687 So.2d at 329. After reviewing the evidence and considering the manner in which the statement was argued to the jury, the First District could not find the error was harmless beyond a reasonable doubt.
In Farrell v. State, 682 So.2d 204 (Fla. 5th DCA 1996), this court reversed the defendant's conviction for lewd and lascivious assault on a child less than 16 years of age because the judge admitted testimony from the child victim that the defendant said he had been in prison for molesting another child. We acknowledged the defendant's statement may have been relevant to explain why the child feared the defendant and delayed reporting the incident to his mother. Nevertheless, we ruled that the statement should not have been admitted at trial because its probative value was outweighed by unfair prejudice.
That case essentially was a swearing contest between the victim and the defendant. There was no other evidence or eyewitness testimony linking the defendant to the crime. Thus, establishing a suggestion that the defendant had committed a similar crime before was extremely significant and prejudicial. Instead of admitting the similar crime evidence, the judge should have allowed the child to testify only that the defendant stated he had been in prison, which would have explained the child's fear and reluctance to report him.[2] Because we were unable to conclude beyond a reasonable doubt that admission of the evidence did not affect the verdict, the cause was remanded for a new trial.
As in these cases, we conclude that Armstrong's statement should not have been admitted at trial. This statement was made when law enforcement was investigating Armstrong's involvement in an entirely unrelated robbery case and served only to show his bad character and propensity to commit the crime charged. Armstrong was not talking about a specific crime in his interview with Henderson but was trying to give Henderson a general idea of his character and what he would do and not do. The prosecutor acknowledged this evidence dealt with Armstrong's character or traits. She told the court:

*193 Prosecutor: This witness made statements in a broad context about himself, not limited to this specific crime. * * * [T]hat was the context of the interview, but there was a lot of discussion about his criminal life in general, his reputation, his criminal activity in the past and present.
Further, during closing argument, the prosecutor used Armstrong's statement to indicate his bad character and to show that he "steals."
The defendant made some statements to Investigator Henderson, and you have had an opportunity to hear those statements. And I don't repeat them to be crude, I repeat them to be accurate. He said, "I'll tell you about Stefan Armstrong. I'll f___ with people I don't know. I'll steal their s___." That's not my words, that's the defendant's words. The defendant goes up to a law enforcement officer and tells him I steal stuff. He is not embarrassed. He doesn't have a problem with it. The defendant keyed law enforcement onto himself.
This is similar to the statement of the prosecutor in Carter.
The trial court characterized the statement as an admission that Armstrong takes the property of others. However, Armstrong used the future tenseI will steal. He never admitted to a specific robbery.
Assuming this statement constituted an admission against interest or was somehow relevant, its admission at trial created a danger of unfair prejudice, which substantially outweighed any probative value. § 90.403, Fla. Stat.[3] The statement was made while Armstrong was being interviewed in an unrelated robbery case which involved a shooting. While the state claimed the interview was voluntary, other portions of the tape (reviewed by the court but not heard by the jury) indicate that Henderson wanted Armstrong to take a voice stress test and that Armstrong believed he was a suspect in the shooting.
During the interview, Armstrong tried to convince Henderson that he was not involved in the shooting by saying that he will steal but he would not harm anyone. The fact that Armstrong was trying to clear himself of the shooting undercuts the reliability of this statement. In other words, Armstrong may have said anything so as not to be arrested for the shooting.
The jury, however, was not told about the context in which this statement was made. The court gave the defense the opportunity to provide this information but the defense declined.[4] This was a reasonable trial tactic because while this may have explained the context of the statement, it would have also informed the jury that Armstrong was a suspect in a more dangerous robberyone involving a shootingthat could have been even more damaging to his case.
We also reject the state's argument that any error in admitting this statement was harmless. We recognize that Jessica seemed certain that Armstrong was her *194 assailanther identification was described as positive, without hesitation and "almost instantly." Armstrong was within arm's length of Jessica, in the afternoon on a sunny day, and she clearly saw his face.
Nevertheless, the test of harmless error is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or an overwhelming evidence test. State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Hill v. State, 616 So.2d 1160 (Fla. 5th DCA), rev. denied, 624 So.2d 266 (Fla. 1993). Rather, the focus is on the impact of the error on the trier-of-fact. Was there a reasonable possibility that the error affected the verdict? The burden to show that the error was harmless is on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful. DiGuilio, 491 So.2d at 1139.
While Jessica may have seemed certain of her identification, there was no physical evidence, such as fingerprints or footprints, which tied Armstrong to the crime. This circumstance is similar to the evidence in Farrell. The jury may have taken Armstrong's crude and vulgar comments as an admission of this crime (which is unfair and uninvited), or at the very least as admission of bad characterthat he steals. The prosecutor enhanced the effect of the statement by her comments in closing argument, by suggesting they were the reason Armstrong became a suspect, and that he admitted to stealing. In these circumstances, we cannot say beyond a reasonable doubt that the error did not affect the verdict.

II. JURY INSTRUCTION
Armstrong also contends that the trial court erred in refusing the defense's request for a jury instruction on attempted robbery because the evidence at trial did not establish, as a matter of law, just the completed offense of robbery. Armstrong claims there was evidence that he merely attempted the robbery, but that robbery was interrupted and abandoned when the vehicle alarm sounded. Without the instruction on attempted robbery, Armstrong argues he was deprived of an opportunity for a jury pardon. Evans v. State, 831 So.2d 808 (Fla. 4th DCA 2002) (refusing to instruct the jury on the attempt to commit the offense charged, where the evidence does not point only to a completed offense, deprives the defendant of the opportunity for a jury pardon, rendering such a failure reversible error).
Florida Rule of Criminal Procedure 3.510(a) governs jury instructions on attempts:
Rule 3.510. Determination of Attempts and Lesser Included Offenses
On an indictment or information on which the defendant is to be tried for any offense the jury may convict the defendant of:
(a) an attempt to commit the offense if such attempt is an offense and is supported by the evidence. The judge shall not instruct the jury if there is no evidence to support the attempt and the only evidence proves a completed offense;
While Armstrong may have been interested in Jessica's money, he was not charged with robbing Jessica of money. Rather he was charged with robbing Jessica of her wallet.
"Robbery" is defined as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other *195 property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(a), Fla. Stat. The evidence showed that Armstrong completed the robbery as chargedhe took Jessica's wallet by force, violence, assault, or putting in fear. The fact that Armstrong quickly dropped the wallet, either because there was no money in it or because the vehicle alarm sounded, did not turn the already completed robbery into an attempted robbery.[5]

III. EXCLUSION OF ALIBI WITNESS
Finally, Armstrong contends the trial court erred when it excluded Dutka, one of his alibi witnesses. Armstrong argues the state cannot claim it was prejudiced because Dutka had been listed as a state witness in another robbery case against him. Thus the state knew her and could have easily taken her deposition. Armstrong also argues the court should have considered some less drastic measure to remedy any prejudice to the state.
Under rule 3.200, the trial court may exclude an alibi witness if the defense fails to comply with the requirements of the rule:
Rule 3.200. Notice of Alibi
On the written demand of the prosecuting attorney, ... a defendant in a criminal case who intends to offer evidence of an alibi in defense shall, not less than 10 days before trial or such other time as the court may direct, file and serve on the prosecuting attorney a notice in writing of an intention to claim an alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or the defendant's attorney, the names and addresses of the witnesses by whom the defendant proposes to establish the alibi....

If a defendant fails to file and serve a copy of the notice as herein required, the court may exclude evidence offered by the defendant for the purpose of providing an alibi, except the defendant's own testimony.... For good cause shown the court may waive the requirements of this rule. (emphasis added)
Defense counsel conceded the notice of alibi did not comply with this rule. Despite this concession, the judge denied the state's request to strike the notice conditioned on the defense making Reynolds and Dutka available to the state that afternoon before trial. Defense counsel agreed to do so.
The state was able to depose Reynolds and used information from that deposition to impeach him at trial. For example, Reynolds testified for the defense that Armstrong moved in with him a week after Thanksgiving and was still living with him until he was incarcerated. However, in his deposition, Reynolds did not give a clear answer as to when Armstrong moved in with him.
Reynolds also testified that he knew where Armstrong was "all day, every day." However, Reynolds stated in his deposition that he went to his grandmother's house several mornings a week to fix her breakfast and work on her house. Thus the state was able to obtain valuable information from Reynolds which cast doubt on his alibi of Armstrong.
*196 In contrast, Dutka did not appear for her deposition. Although she was in the courtroom on the day of trial, no explanation was given for why she was not available for her deposition the day before.
Given the defense's violation of the alibi rule, its unexplained failure to produce Dutka in violation of the court's order and the obvious prejudice to the state stemming from its inability to depose her, we find no abuse of discretion in excluding Dutka as a witness. See Lee v. State, 534 So.2d 1226 (Fla. 1st DCA 1988) (it is within a trial court's discretion to order exclusion of a witness as a sanction for violation of a discovery order).
The cases cited by Armstrong, Pelham v. State, 567 So.2d 537 (Fla. 2nd DCA 1990), Austin v. State, 461 So.2d 1380 (Fla. 1st DCA 1984) and Bell v. State, 287 So.2d 717 (Fla. 2nd DCA 1974), do not involve the violation of a court order to produce a witness. In addition, Pelham and Bell have been undercut by Small v. State, 630 So.2d 1087 (Fla.1994). Both Pelham and Bell hold that a violation of the notice of alibi rule under 3.200 should be treated like a discovery violation under rule 3.220, thus triggering a Richardson[6] type hearing.
However, in Small, the Florida Supreme Court rejected this view, explaining as follows:
We disagree with Small's initial premise that rule 3.200 and rule 3.220 are fundamentally the same. Although the two rules share the same rationale, to eliminate surprise at trial, the notice of alibi rule is not a discovery rule. Rule 3.200 also diminishes the opportunity of presenting manufactured false alibis. Hicks v. State, 400 So.2d 955 (Fla.1981). Under the ten-day notice requirement, the state is at least advised of the existence of the alibi and has the option of investigating it. If the state goes to trial without this notice, it does not have the opportunity to depose the alibi witness, determine the witness's credibility, determine whether there is a witness to rebut the alibi witness's testimony, or otherwise check its validity. Thus, a defense violation of rule 3.200 inherently prejudices the prosecution.

Rule 3.220, like the notice of alibi rule, was designed to ensure that both the state and the defense have knowledge of relevant information regarding the case and are properly prepared for trial. However, unlike the notice of alibi rule, a violation of rule 3.220 will not always result in prejudice. For that reason, rule 3.220(n) provides a choice among sanctions the court may impose for violation of the rule. After conducting a Richardson inquiry, the court can determine how severe the sanction should be based on the degree of prejudicial impact caused by the discovery violation. The notice of alibi rule does not provide a list of sanctions comparable to that in rule 3.220 because a violation of the notice of alibi rule will always result in prejudice. In contrast to rule 3.220, the notice of alibi rule limits the court to excluding the alibi evidence or waiving the requirement for good cause if the defendant fails to provide the state with the requisite notice. Because a violation of the notice of alibi rule is not completely analogous to a failure to furnish discovery information under rule 3.220, the decisional law applying to rule 3.220 is not equally applicable to the notice of alibi rule. (emphasis added)
630 So.2d at 1088-1089.
The court also disagreed with Small's general contention that a trial court's failure *197 to allow a defendant an opportunity to show good cause constitutes reversible error. As the court explained:
[T]he initial error in this case actually occurred when the defense failed to notify the state about the alibi witness. The defense learned of the alibi witness during the first trial and failed to notify the state in a timely manner. Six weeks later the defendant's second trial began, and the defense again violated rule 3.200 by failing to provide the name and address of the alibi witness. To reverse the trial court's decision would allow the defense to benefit from its own mistake in failing to comply with the Florida Rules of Criminal Procedure. "[T]he notice-of-alibi rule was never intended to provide a defendant with a procedural device to escape justice." Smith v. State, 319 So.2d 14, 17 (Fla.1975).
630 So.2d at 1089.
Here the initial error occurred when the defense filed a notice of alibi that did not comply with rule 3.200. The defense was then given a reasonable means short of witness exclusion to remedy that deficiency. However, the defense did not avail itself of that opportunity and did not produce Dutka for her deposition, thus resulting in her exclusion as a witness. There was no error in excluding her as a witness.
REVERSED and REMANDED for a New Trial.
GRIFFIN and PALMER, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959) codified in section 90.404(2)(a):

90.404. Character evidence; when admissible
(2) Other crimes, wrongs, or acts. 
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[2] Here the prosecutor argued Armstrong's statement was essential to the state's case to show the reason why Armstrong was identified as a suspect. However, Henderson could have simply testified that, as the result of an interview or investigation, he began to suspect Armstrong of this robbery.
[3] 90.403. Exclusion on grounds of prejudice or confusion

Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence....
[4] The state wanted only the first portion of the statement admitted ("I will f___ with people I don't know, I will steal somebody's s___, but I ain't never hurt nobody in my f______ life, man."). The court asked defense counsel if he wanted the next line to be admitted ("I have never hurt nobody.") and counsel said yes. Defense counsel declined to allow any more of the interview to be shown to the jury.
[5] Jessica testified she bought the wallet for about $12 a few months before the robbery. On appeal, Armstrong does not argue the wallet fails to meet the definition of "other property which may be the subject of larceny."
[6] Richardson v. State, 246 So.2d 771 (Fla. 1971).