# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

Case No. 5D2023-1217
LT Case No. 2020-CA-002431

———————————————

PATTY LONG, by and through her
CO-GUARDIANS, SARAH LONG
and DENNIS LONG, and MATT
LONG, by and through his
ATTORNEY-IN-FACT DENNIS
LONG,

     Appellants,

     v.

FAMILY SUPPORT SERVICES of
NORTH FLORIDA, INC.,

     Appellee.

———————————————

On appeal from the Circuit Court for Duval County.
Katie L. Dearing, Judge.

Bryan S. Gowdy and Nicholas P. McNamara, of Creed & Gowdy,
P.A., Jacksonville, and Karen Gievers, Tallahassee, and Howard
M. Talenfeld and Lisa M. Elliott, of Justice for Kids, Kelley
Kronenberg, P.A., Fort Lauderdale, for Appellants.

Megan G. Colter and Dorothy Venable DiFiore, of Quintairos,
Prieto, Wood & Boyer, P.A, Tampa, for Appellee.

June 28, 2024

EDWARDS, C.J.

Appellants, Patty Long and Matt Long,[1] are biological sister and brother who were in Florida's foster care system for some time; they are now adults.[2] While children, Brother repeatedly sexually molested and physically abused Sister, and the two engaged in child-on-child sexual activities/abuse with each other. Despite knowing those disturbing facts, the agencies responsible for foster child placement repeatedly placed Brother and Sister together in foster home settings where the molestation, abuse, and inappropriate sexual behaviors continued.

Appellants sued those agencies, Appellee, Family Support Services of North Florida, Inc. ("FSS") and its subcontracting agency, Daniel Memorial, Inc., ("the Daniel agency") alleging they were negligent in their placements. At trial, Appellants asserted that the agencies violated Florida Administrative Code Rule 65C-28.004 (2006) and Florida Administrative Code Rule 65C-28.004 (2016) by making these inappropriate placements, which negligence resulted in great emotional and psychological harm to both Appellants.[3] The regulation was jointly admitted into evidence during the jury trial. Following a defense verdict and denial of their new trial motion, Appellants timely appealed. Appellants argue that the trial court reversibly erred by refusing to give their requested standard jury instruction that violation of a regulation is evidence of negligence. We agree that refusal to

---

[1] This opinion uses the same pseudonyms for the brother and sister that were used in the briefs. For clarity and brevity, they are sometimes referred to as Brother and Sister and elsewhere as Appellants in the opinion.

[2] Although both were adults when suit was filed, Sister sued by and through her Co-Guardians, her adoptive parents, while Brother sued by and through his Attorney-in-Fact, their adoptive father.

[3] It was unclear why the siblings' cases were tried together, other than perhaps for efficiency.

provide the requested instruction was an abuse of discretion and reverse for a new trial on all issues.[4]

## Background Facts: Sexual and Physical Abuse

Appellants were deemed dependent and placed in the care of Florida's Department of Children and Families ("DCF"). Foster care and related services for dependent children are provided by DCF through private community-based "lead agencies" who have entered into contracts with DCF. Appellee, FSS, "entered into a written contract with [DCF] as the lead community-based care agency responsible for coordinating, integrating, and managing a local system of support and services for abused, abandoned and neglected children and their families in Duval and Nassau Counties," where Brother and Sister were placed. FSS in turn entered into a sub-contract with the Daniel agency whereby Daniel would perform certain tasks related to foster care and child placement.

After staying at a Salvation Army shelter and then with relatives, Sister and Brother were placed in what the parties refer to as the youth ranch. During their placement at the youth ranch, FSS and the Daniel agency received reports that Brother had repeatedly attempted to, and actually had, sexually molested and physically abused Sister; that the two engaged in sexual activities with each other; that Brother had repeatedly sexually molested his younger male cousin; and that Brother had attempted to have sex with his mother. A "safety plan" was created that prohibited Brother and Sister from sharing a room and forbade them from being left alone together. Brother received therapy while at the youth ranch. Safety plans, such as just mentioned, were created by appropriate staff at the Daniel agency. Members of FSS's placement unit would review and track each safety plan "to ensure the safety and appropriateness of the placement in the home, to

---

[4] Appellants assert that the trial court departed from its neutral role and became an advocate for FSS, an issue we address but find does not merit reversal. Appellants also argue about the exclusion of a handwritten note written by Brother, an issue we need not reach, given that the case will be retried.

3

make sure we weren't putting any child in a situation that might lead to them being part of a sexual abuse incident."

Evidence presented at trial revealed that when Sister's condition deteriorated after reporting the sexual conduct and physical abuse, a licensed mental health counselor recommended that Sister be placed into a higher level of care in a "therapeutic" foster home.[5] The Daniel agency removed Sister from the youth ranch and in 2015 placed her in a regular, not a therapeutic, foster home where there was but a single parent, who worked. The same mental health counselor testified at trial that she reported that Brother was making some progress and recommended against removing him from the youth ranch placement, lest his condition deteriorate and he take out his frustrations and anger on Sister.

During the Christmas season of 2015, Brother had a temporary stay at the single parent foster home with Sister. In connection with that holiday stay, neither FSS nor the Daniel agency advised that foster parent of the safety plan that had been in place at the youth ranch, nor did they advise her of the sexual misconduct or physical abuse issues. In furtherance of a preference for keeping biological siblings together, in January 2016 the Daniel agency placed Brother in the same single parent, regular foster home where Sister was residing.[6] Neither FSS nor the Daniel agency asked the mental health counselor her opinion about the proposed placements of Sister and Brother, although FSS's former placement manager testified that such recommendations were always taken into consideration. Either the night before or the day he was dropped off at this foster home, the Daniel agency finally provided that single foster parent with Brother's "abuse history," disclosing facts about him being sexually aggressive, that he had molested Sister in the past, and so forth.

---

[5] Sister was Baker-acted several times as a result of displaying severe behavioral and emotional disturbances, including attempting suicide.

[6] *See, e.g.,* § 39.4024, Fla. Stat. (2021), which discusses the desirability of keeping siblings together when making out-of-home placements when it is in the children's best interest.

4

That foster parent was understandably upset by getting that kind of information with no advance notice.

While with the single, working foster parent, the children were enrolled in FSS's mentoring program. Sarah Long mentored Sister, while Dennis Long mentored Brother.[7] The Longs were a married couple going through training and screening to become foster parents. In May 2016, the children's safety plan was allegedly modified to permit the siblings to be left alone. This single foster parent was never aware of any abuse occurring while the children were with her. However, as a single, working foster parent, she could not monitor their behavior when she was away and there were no video cameras in her home. Sister testified at trial that while at this foster home, Brother continued to physically and sexually abuse her.

In September 2016, the Daniel agency removed Brother and Sister from that single parent foster home and placed them with Dennis and Sarah who had by then just become licensed foster parents. The Longs ultimately adopted the siblings. According to Sister's trial testimony the abuse by Brother continued in this new placement, even after they were adopted. Brother likewise testified that the sexual and physical abuse of Sister continued in Dennis and Sarah's home. Approximately seven months following their adoption, Sarah and Dennis Long discovered that Brother and Sister had engaged in sexual activities with each other at their home.

This suit, seeking money damages, was filed against both FSS and the Daniel agency. Before the jury trial commenced, the Daniel agency settled with Brother and Sister and was dismissed from the case. An amended complaint was filed which simply eliminated the Daniel agency as a defendant. The trial proceeded only against the lead agency, FSS, and resulted in a defense verdict. Appellants' motion for a new trial was denied.

## Agency Responsibility for Placement of Children

---

[7] Once again, pseudonyms are being used.

5

Lead agencies, like FSS, are required by law to comply with relevant statutory requirements and agency rules when they are providing foster care and pre-adoption services for children pursuant to a DCF contract. § 409.988(1)(j), Fla. Stat. (2014). The subcontract between FSS and the Daniel agency listed as its first major program goal that "[c]hildren will be protected from abuse and neglect." Under its contract with DCF, FSS was required to "deliver Placement Services" to children. The subcontract with Daniel did not eliminate FSS's placement responsibility; rather, it required Daniel to "work cooperatively with [FSS] and its departments, including the Central Placement Unit". FSS's subcontract with the Daniel agency provided that all placement moves had to be authorized by FSS. The subcontract defined FSS's Central Placement Unit ("Kids Central") as being "responsible for securing placement of Dependent Children."

The former placement manager for FSS described it as a licensed child placing agency. Her responsibilities included overseeing FSS's placement specialists and the day-to-day functions of placing children in foster care. When a placement was made by the Daniel agency, FSS would be responsible for reviewing the placement to ensure that it was appropriate and complied with all the applicable rules and procedures. She further testified that FSS's placement unit served as "a centralized way to ensure that children are safely placed in the most appropriate home." One of the child placement specialists testified that *all* placement changes were required to go through FSS's central placement unit.

When a placement request was received by FSS, one of its placement specialists would hold a team meeting to gather all relevant information, following which the FSS placement specialist "would begin looking for the best matched foster home or group home." A child placement specialist at FSS testified that it was his responsibility to share information regarding the children's background, history, and needs with prospective placements.

Rule 65C-28.004

6

To ensure proper care for children under its jurisdiction, DCF is authorized to, and does, promulgate rules for provision of foster care related services including specifically the placement of children. One such rule, relevant to this case, is Rule 65C-28.004 ("Rule"), establishing "placement-matching requirements [that] apply to both initial placements and to any subsequent placements of [each] child." Fla. Admin. Code R. 65C-28.004(15) (2006). Two versions of this Rule are relevant. One version was adopted in May 2006, which covers the time frame when the siblings were initially placed with the single foster parent. The second version was adopted in May 2016, covering the time period when Brother and Sister were placed in foster care with Sarah and Dennis Long. Both versions were admitted into evidence as joint exhibits and were available for the jury's consideration.

Subsection 10 of the 2006 version of the Rule and subsection 9 of the 2016 version of the Rule provide guidelines for the placement of a child who is a known or an identified victim of sexual abuse, such as Sister.

Subsection 11 of the 2006 version of the Rule is titled "Placement of Children Who Are Alleged Juvenile Sexual Offenders, Exhibiting Sexually Inappropriate Behaviors or Who Are Sexually Reactive." It is undisputed that this subsection applied directly to the placement of Brother and indirectly to Sister in the single foster parent home. In addition to gathering information about that child's [Brother's] abuse history, which is to be provided to the foster parent, there is another requirement. Rule 65C-28.004(11)(a)(2) provides that

> the person making the placement shall:
>
> (2) Ensure that the [sexually aggressive/abusive] child is the youngest child placed in the home unless the placement is a treatment facility with adequate video monitoring. When matching a child exhibiting sexually abusive or reactive behaviors to a substitute care placement, consideration shall also be given to factors that increase the vulnerability of other children living in the home, such as mental and/or

7

emotional disability, physical disability, chronic illness and physical size.

Fla. Admin. Code R. 65C-28.004(11)(a)(2) (2006).

The 2016 version of the Rule, applicable to the siblings foster care placement with Sarah and Dennis Long, still required safeguards for all children in the home along with provision of detailed information of the child's past history of causing harm, but the newer version changed the verbiage found in subsection 11 of the 2006 version of the rule, so that in 2016 it read in pertinent part:

(10) Placement of Children With Behaviors That May Result in Harm.

(a) When it is necessary to place a child who is known to have any behaviors that may result in harm, the person making the placement shall implement safeguards to ensure that the needs of the child for supervision, treatment and intervention are addressed and that the safety of other children in the same setting is ensured.

Fla. Admin. Code R. 65C-28.004(10)(a) (2016).

Appellants claimed that FSS violated both subsection 11 of the 2006 version and subsection 10 of the 2016 version by continuing to place the older, sexually and physically abusive Brother in the same home as the younger, repeatedly victimized Sister.

### Refusal to Give Requested Jury Instruction

Appellants requested a standard Florida jury instruction that is often given in civil cases.[8] The requested instruction is number 401.9 and is titled "VIOLATION OF STATUTE, ORDINANCE, OR

---

[8] Appellants initially requested this instruction prior to trial, then during trial they withdrew their request for a period of time, only to re-request the instruction during the charge conference.

8

REGULATION AS EVIDENCE OF NEGLIGENCE." Fla. Std. Jury Instr. (Civ). 401.9. Brother and Sister's written request for that jury instruction said that "Plaintiffs claim that FSS violated the following statutes, Florida Administrative Code Rules, and DCF Operating Procedures." They further requested in their written request that the trial court read to the jury, *inter alia*, both the 2006 and the 2016 versions of the Rule.

Florida Standard Jury Instruction 401.9 further provides that:

> Violation of these statutes or regulations is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that FSS violated these statutes or regulations, you may consider that fact, together with the other facts and circumstances, in deciding whether it was negligent.

The trial court determined that the Rule only applied literally to "the person making the placement" and said that any question of who made the placement was not an evidentiary matter. As a matter of law, the trial court determined that the Daniel agency was "the person making the placement" and by implication that it was not FSS. Thus, the trial court denied Appellant's request for Florida Standard Jury Instruction 409.1 with regard to the Rule.

Neither the Rule nor the relevant statutes define who "the person making the placement" is. In its answer to the operative amended complaint, FSS specifically stated that it had a duty to both Brother and Sister to place each in homes that could meet their needs. The evidence presented at trial demonstrated that FSS, through its Placement Unit, was indeed involved in each placement, had to approve each placement, and took responsibility for ensuring that children would be placed safely and not in a foster home with another child who could or was likely to harm that child physically or sexually. FSS's former placement manager testified specifically that Brother and Sister's placement with the Longs was required to go through FSS's central placement unit.

In closing argument, FSS's counsel discussed whether it could be liable because "we [FSS] put" Brother and Sister together first

9

in the single parent foster home and "because we [FSS] placed" Brother and Sister together in Daniel and Sarah's home. FSS asked the jury to consider, "[d]id Family Support Services make a mistake by doing these two placements on these two dates?" Counsel further stated, "that there's just no evidence whatsoever that [FSS] should have done anything different in the way that they worked with placing these children." Finally, counsel argued to the jury that "[t]here's no indication we [FSS] breached a duty in the manner in which [FSS] performed its placement function." If the two placements of Sister and Brother were made by FSS and violated the Rule, that would indeed be evidence of negligence. It was clearly a question for the jury.

The standard of review for the denial of a jury instruction is abuse of discretion. *Barbour v. Brinker Fla., Inc.,* 801 So. 2d 953, 959 (Fla. 5th DCA 2001). The party appealing the trial court's refusal to give a requested jury instruction must demonstrate that the instruction accurately stated the applicable law, the facts supported giving the instruction, and the instruction was necessary in order to allow the jury to properly resolve all the issues in the case. *Vitrano v. Fla. Power & Light Co.*, 190 So. 3d 89, 91 (Fla. 4th DCA 2015). The first two requirements are discussed above and have been satisfied.

As to the third requirement, necessity of the instruction, we consider the fact that the jury was instructed, at FSS's request, that it was not liable for the negligent acts or omissions of the Daniel agency. Appellants agree this was an accurate instruction based upon section 409.993(2)(a), Florida Statutes (2016). However, without also instructing the jury to consider whether the Rule had been violated by FSS in the two 2016 placements of Brother and Sister, the jury did not have all the legal guidance it needed. Thus, the requested but not given instruction was necessary to ensure that the jury would have the proper legal framework against which to analyze the evidence. Under the circumstances here, failure to give the requested instruction was an abuse of the trial court's discretion.

However, before considering whether a final judgment will be reversed and a new trial will take place, we must determine whether the error or abuse of discretion was harmless. *Special v.*

10

*W. Boca Med. Ctr.,* 160 So. 3d 1251 (Fla. 2014). "[T]he beneficiary of the error [FSS here] must prove that there is no reasonable possibility that the error complained of contributed to the verdict." *Id.* at 1253. When the party successfully blocking the instruction capitalizes on the absence of the instruction during closing, it is not a harmless error. *See Araj v. Renfro*, 260 So. 3d 1121, 1122–23 (Fla. 5th DCA 2018). As in *Araj*, FSS highlighted the error by pointing out during closing arguments that there would be no legal instruction from the judge about the Rule, and stating that "there's no rule, statute, anything that says particular kids have to be placed at particular places." FSS has not carried its burden of proving that the trial court's refusal to instruct the jury regarding the Rule did not possibly contribute to the defense verdict. Accordingly, we find the trial court's refusal to give the requested instruction is harmful and requires that we reverse the final judgment and remand for a new trial on all issues.

## Trial Court's Neutrality

Appellants argue that the trial court departed from its role as a neutral arbiter and became an advocate for FSS. During trial, FSS's counsel objected from time to time as trial lawyers do. Some objections were sustained, while others were overruled. However, there were multiple occasions where FSS's counsel objected, stated the grounds for her objection; following which, the trial court *sua sponte* would interject and supply additional or completely different grounds for FSS's objection, and then sustain the court's additional or different objection. For example, FSS argued that no predicate had been laid for a question; following which, the court noted "[a]nd it calls for a legal conclusion for which she's not qualified to answer that. So the objection is sustained." FSS next objected to a question on the ground of relevancy, to which the court added, "[a]nd leading. Sustained." FSS objected to another question on the sole ground of "lack of predicate." The trial court then stated, "[s]ustained as to leading." On another occasion, FSS stated, "[o]bjection. Relevance;" the trial court then said, "[s]ustained as to speculation."

Appellants also point out other instances during which the trial court seemed to depart from its expected neutral role. When no objection had been made by FSS, the trial court ordered a

11

sidebar conference and asked Appellants' counsel why she was asking a fact witness questions that should be directed only to an expert witness. When Appellants attempted to introduce a note written by Brother which was discovered after his adoption, FSS objected but the trial transcript reveals that it was the trial court who argued with Appellants' counsel for page after page of the record as to how it could be relevant.[9] The trial court's argument with Appellants fills nearly a dozen pages of the transcript before FSS finally begins to participate in the discussion.

The issue of whether the trial court violated a party's due process rights by exceeding the role of a neutral arbiter is reviewed de novo. *E.T. v. Dep't of Child. & Fams.*, 261 3d 593 (Fla. 4th DCA 2019); *A.M. v. Dep't of Child. & Fams.*, 223 So. 3d 312, 315 (Fla. 4th DCA 2017). However, this issue was not properly preserved for appellate review as to any specific instance discussed above because Appellants failed to make contemporaneous objections regarding the trial judge's alleged misconduct. *See Charles v. State*, 258 So. 3d 549 (Fla. 3d DCA 2018).[10] In their motion for new trial, Appellants did argue that when the foregoing instances were taken as a whole, they demonstrated that the trial court had departed from its neutral role.

---

[9] Brother's handwritten note was a disturbing sexually deviant checklist relating to with whom he would have sex or rape or be raped by. During the lengthy argument with the court, Appellants proffered that one of their expert's testimony about the note showed its relevance to Brother's claimed permanent emotional and psychological damages. As the case will be retried, we do not reach the issue of whether Appellants laid a proper predicate or whether they can do so in the future in a manner that establishes the note's relevance and admissibility.

[10] We understand that it is uncomfortable and awkward to be forced to object to the court's conduct, but it serves the important, necessary functions of contemporaneous objections: alerting the judge "that error may have been committed" and providing "an opportunity to correct it at an early stage of the proceedings." *Castor v. State,* 365 So. 2d 701, 703 (Fla. 1978).

A trial judge is prohibited "from stepping away from the appearance of neutrality to become an advocate for either party." *Dep't. of Child. & Fams. v. J.J.*, 368 So. 3d 1017 (Fla. 5th DCA 2023) (quoting *Evans v. State*, 831 So. 2d 808, 811 (Fla. 4th DCA 2002)). "[I]t is permissible for a trial judge to ask questions deemed necessary to clear up uncertainties as to issues in cases that appear to require it." *J.F. v. State*, 718 So. 2d 251, 252 (Fla. 4th DCA 1998); *see also Chastine v. Broome*, 629 So. 2d 293, 295 (Fla. 4th DCA 1993) ("[T]he trial judge serves as the neutral arbiter in the proceedings and must not enter the fray by giving 'tips' to either side.").

Counsel for Brother and Sister had their own way of trying this case, of questioning witnesses, offering exhibits, and making legal arguments; the same was true for FSS's counsel. Other lawyers may have gone about things differently. The trial court was obviously concerned with having a clean trial with only appropriate testimony being received by the jury and likewise, keeping the trial moving towards a conclusion. We do not reverse based on any finding that the trial court departed from the required standard of neutrality. However, as the case will be retried, we remind all concerned that it is the role of the attorneys to state objections and the grounds for the objections, while the trial court is to rule on the objections based on the grounds offered by counsel with no supplementation by the court.[11]

## Conclusion

We reverse the final judgment entered in FSS's favor, reverse the order denying Appellants' motion for new trial, and remand for a new trial on all issues consistent with this opinion.

---

[11] We find no fault with the trial court avoiding a potential mistrial by *sua sponte* halting Appellants' invitation made during closing for the jury to "send a message" when punitive damages had not been sought. We trust that Appellants' counsel will avoid making that clearly inappropriate argument during the retrial.

13

REVERSED and REMANDED.

BOATWRIGHT and MACIVER, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

14