CONNER, J.
Jorge Carlos Garrido appeals his conviction for aggravated assault with a firearm and the resulting mandatory minimum sentence of three years in prison. Garrido raises four issues on appeal that the trial court: 1) abused its discretion in giving the standard jury instruction for justifiable use of non-deadly force in defense of person without modification, contrary to this court’s decision in Bassallo v. State, 46 So.3d 1205 (Fla. 4th DCA 2010); 2) abused its discretion in giving the jury a modified version of the standard instruction for justifiable use of non-deadly force in defense of property; 3) abused its discretion in denying his request for a special instruction that pointing a firearm is non-deadly use of force as a matter of law; and 4) erred in denying his motion for judgment of acquittal. We reverse on the first issue, but affirm on the remaining issues.

Factual Background

R.D., a special process server appointed by the Broward County Sheriffs Office, was contracted to serve a foreclosure summons on Garrido and his wife. As a special process server, R.D. was issued a badge with the Sheriffs Office logo on it, but he was not permitted to identify himself as employed by or being from the Sheriffs Office.
On his first attempt of service, R.D. proceeded to the address he was given for *293 Garrido’s home. A male came to the door and informed R.D. that Garrido didn’t live there. R.D. proceeded to Garrido’s wife’s address and personally served her. He asked the wife where Garrido lived, and she told him he lived at the address R.D. first visited. R.D. then obtained Garrido’s phone number. A skip trace on the phone number given by Garrido’s wife revealed Garrido’s address to be the address R.D. first tried. R.D. called the number and a man answered, identifying himself as George. R.D. identified himself and asked to verify Garrido’s address, but the man then denied knowing George and identified himself as Carlos. When R.D. asked the man if Carlos was his middle name and if he could come and serve the documents, the man hung up.
R.D. proceeded to the original address, parking at the end of the driveway. R.D. walked up and knocked on the front door, then rang the doorbell. Garrido came to the door and, talking through the door, asked who was there. R.D. identified himself and stated that he had legal documents for Garrido. Garrido said, through the door, “Get the f— off my property.” R.D. responded that he was there in a legal capacity and needed to serve the documents. R.D. saw Garrido in the window and walked over and showed him his ID. Garrido asked “What is that? Who are you again?” R.D. then testified as follows:
A. I told him I am a process server appointed to the Sheriffs Office to serve the document. All I need to know is if George lives here and leave the paper outside.
Q. What happened next?
A. He told me, if I don’t get off his property, he is going to f — ing kill me, and he held up a firearm.
R.D. began to back up and warned Gar-rido that he would call the police if he did not put the gun away. Garrido then pointed the gun at R.D. and again told R.D. to get off his property. R.D. testified that Garrido’s actions made him very scared. R.D. retreated and called the police, and after they arrived, Garrido was arrested.
Garrido’s version of events differed from R.D.’s. He claimed he was upstairs repairing one of his guns when he heard the doorbell ring. He was not expecting any visitors, and it was twilight outside. Gar-rido approached the door, still holding one of his guns, and asked who it was. R.D. responded that he was a Broward Sheriffs Officer. Garrido went to the side window and again asked who was there. R.D. responded that he was from the Sheriffs Department, but Garrido could see R.D. was not wearing a uniform; instead, he was wearing a T-shirt with flip-flops. Gar-rido told R.D. that he was not a law enforcement officer, and he needed to get off the property. He believed R.D. was impersonating a law enforcement officer. R.D. told Garrido that he had a right to be there and was not leaving. Garrido believed R.D. was becoming angry. He again told R.D. to get off his property. R.D. responded that he had a right to be there and asked Garrido if he was George Garrido. Garrido felt R.D. was acting aggressively, so he showed R.D. the gun he was holding. Garrido denied pointing the gun at R.D. and testified the gun was not loaded. Garrido denied seeing an ID badge, using profanity, or hearing R.D. say that he was a process server.

Justifiable Use of Nan-Deadly Force in Defense of Person Instruction

During the charge conference, the court discussed giving the standard instruction on justifiable use of non-deadly force, which would read in relevant part:
Justifiable Use of Non-deadly Force. An issue in this case is whether the defendant acted in self-defense. It is a
*294 defense to the offense with which Jorge Carlos Garrido is charged if the injury to [R.D.] resulted from the justifiable use of non-deadly force. “Non-deadly” force means force not likely to cause death or great bodily harm.
cf. Fla. Std. Jury Instr. (Crim.) 3.6(g). Garrido’s counsel moved for the word “injury” to be stricken from the standard instruction, since R.D. was not injured. Garrido’s counsel suggested instead using “show of force.” The trial court denied the request, instead'telling defense counsel that he could argue that the “injury” to R.D. was “fright.”
Garrido claims that giving the standard jury instruction without revision was reversible error based on this Court’s decisions in Bassallo v. State, 46 So.3d 1205 (Fla. 4th DCA 2010), and Brown v. State, 59 So.3d 1217 (Fla. 4th DCA 2011). “The standard of review for jury instructions is abuse of discretion.” Zama v. State, 54 So.3d 1075, 1077 (Fla. 4th DCA 2011).
In Bassallo, we held it is fundamental error to include “injury” in the standard jury instruction for justifiable use of non-deadly force if the defendant is not charged with a crime which makes injury an element of the crime and there is no evidence of injury. There, the defendant was charged with aggravated assault after an altercation with a co-worker. Bassallo, 46 So.3d at 1206. The defendant allegedly chased the co-worker around with a knife. Id. at 1207. At trial, the defendant and other defense witnesses testified that the co-worker initiated the confrontation and threatened the defendant with a 2 x 4 board. Id. at 1208. The defendant testified that he pulled a soapstone out of his pocket and raised it to intimidate the coworker. Id. at 1208-09. The trial court read the standard jury instruction on the justifiable use of non-deadly force, to which the defendant did not object.
On appeal, however, the defendant argued it was fundamental error to give the standard instruction because the instruction provides that use of force is justifiable only if the victim suffers an “injury.” Since no injury occurred, the defendant argued the instruction negated his sole theory of defense. Id. at 1210. This Court held the standard instruction was not an accurate statement of the law because injury is not an element of aggravated assault. Further, the court held the prosecutor compounded the error by arguing during closing that the fact the coworker was in fear of, or terrified of, the defendant did not amount to an injury, and therefore, the self-defense instruction did not apply. Id. at 1211.
In Brown, we again determined that the use of the word “injury” in the standard instruction was inappropriate when there was no evidence of injury. The defendant was charged with battery on a law enforcement officer after hitting and kicking a deputy while the deputy was trying to handcuff him. The deputy testified that he was not injured by the defendant’s strikes. Brown, 59 So.3d at 1218. The trial court read the standard jury instruction on the justifiable use of non-deadly force without objection. During closing, the prosecutor argued that the jury could not find justifiable use of force because the deputy was not injured. The defendant objected on grounds this was a misstatement of the law, but that objection was overruled. Citing Bassallo, this Court reversed, holding the standard instruction negated Brown’s defense. Id. at 1219.
The State argues both Bassallo and Brown are distinguishable because in this case, the prosecutor specifically argued during closing that fear was the injury:
Nondeadly force means the trigger wasn’t pulled. Nobody got hurt. We are talking about fear. The injury in *295 this case is fear. So is there a justifiable use of nondeadly force in this case[?]
Nondeadly force is going to be defined to be not likely to cause death or great bodily harm, and fear most certainly is not great bodily harm. It is fear that is the injury. Fear of great bodily harm, but fear, nonetheless.
There are two flaws in the State’s argument. First, it is the trial court’s responsibility to instruct the jury on the law, not the State’s. Cummings v. State, 648 So.2d 166, 168 (Fla. 4th DCA 1994) (“The trial court had the responsibility to fully and correctly instruct the jury on the applicable law.”). As the jury must follow the law as set forth by the trial court, the fact that the prosecutor and defense counsel correctly state the law during closing does not cure the trial court’s reading of an erroneous instruction. Moore v. State, 903 So.2d 341, 343 (Fla. 1st DCA 2005). Second, the State misses the import of our decision in Bassallo and Brown. Both cases were reversed on grounds the jury instruction was inadequate, not on grounds of improper prosecutorial comment.
Since this Court in both Bassallo and Brown has held the standard jury instruction for justifiable use of non-deadly force is inadequate when the defendant is charged with assault, the trial court abused its discretion in giving the standard instruction on justifiable use of non-deadly force in self-defense. This was Garrido’s sole viable defense because Garrido was not entitled to a justifiable use of non-deadly force in defense of property instruction, as explained below. Therefore, this constitutes fundamental error. Bas-sallo, 46 So.3d at 1211.

Use of Non-Deadly Force in Defense of Property Instruction

Later during the charge conference, the trial court considered the defense of property portion of the standard instruction on the justifiable use of non-deadly force in defense of property. The standard instruction is based upon section 776.031, Florida Statutes (2010).[1] The trial court decided it would give the instruction, but modified the standard instruction by replacing “land” with “real property other than a dwelling,” tracking the language of section 776.031. Since it added the word “dwelling”, the court decided to also give the definition of dwelling set forth in section 776.013, Florida Statutes (2010), which defines dwelling as a residence and its attached porch.[2] Then, the *296 court decided to give the standard instruction for trespass set forth in section 13.4 of the standard jury instructions, substituting “real property other than a dwelling” for the word “property” in the standard trespass instruction.
Garrido argues that the instructions as modified and given by the trial court were misleading because they effectively instructed the jury that the use of non-deadly force was not legally permissible to defend against a trespasser within the cur-tilage of a dwelling. We disagree with this argument.
Garrido sought the use of a standard jury instruction based on a statutory defense provided by section 776.031.[3] The standard instruction does not track statutory language, using “land” instead of “real property other than a dwelling.” Garrido argues using statutory language was more confusing and misleading than using the standard jury instruction. As we have previously observed, “[a] correct jury instruction is not necessarily required to track the language of the standard jury instruction or the statute. If the instructions, as a whole, fairly state the applicable law, the failure to give a particular instruction is not error.” Thompson v. State, 814 So.2d 1103, 1106 (Fla. 4th DCA 2002), disapproved on other grounds, Battle v. State, 911 So.2d 85 (Fla.2005) (citing CSX Transp., Inc. v. Whittier, 584 So.2d 579, 586 (Fla. 4th DCA 1991)).
In Polite v. State, 973 So.2d 1107 (Fla.2007), our supreme court held the statute criminalizing resisting an officer with violence was ambiguous as to whether the State had to prove the defendant knew the person he was resisting was an officer. The court further held that the standard jury instruction for the crime was inadequate because it tracked the ambiguous language of the statute. Id. at 1118.
In the instant case, Garrido does not argue that section 776.031 is ambiguous or confusing. Instead, Garrido argues that the trial court was confused as to whether section 776.031 is applicable when one is standing in the curtilage of a home. In our view, the statute clearly allows the use of non-deadly force within the curtilage of a home. The trial court did not define “dwelling” in a way that would confuse the jury into thinking Garrido could not use non-deadly force at the place where R.D. was standing when the gun was produced (leaning over bushes in front of a window). “Dwelling” was defined by the court to be a residence and its attached porch. A residence is commonly understood to be the house in which one lives. Residence Definition, Dictionary.com, http:// dictionary, reference, com/browse/residence (last visited Aug. 9, 2012). Neither side requested an instruction defining “a residence.” Although section 776.013(5) begins with “As used in this section ...,” it does not appear inappropriate to apply the definition of “dwelling” in that section to other parts of Chapter 776 (Justifiable Use of Force). Cf. Fla. Std. Jury Instr. (Crim.) 3.6(g).
The evidence was undisputed that R.D. was not inside the residence or standing on the porch when Garrido produced the gun where R.D. could see it. The defense was free to argue that at the time the gun was produced, R.D. was trespassing on real property other than a dwelling and Garri-do was justifiable in using non-deadly force. Thus, we find no error and affirm on this issue.

*297
Special Instruction on Use of a Firearm

During the charge conference, Gar-rido requested a special instruction which would have read: “Pointing a firearm without firing it amounts to the use of nondeadly force.” The trial court determined that the special instruction was not necessary because the standard instruction defined what constituted deadly force or non-deadly force; so, it was a jury determination whether Garrido’s actions in this case constituted deadly or non-deadly force. Garrido argues it was error to refuse to give the special instruction based on two cases from sister district courts that have held that pointing a gun without firing it is non-deadly force as a matter of law.
The failure to give a requested special jury instruction is error only if the following three elements are satisfied: “(1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing.” Stephens v. State, 787 So.2d 747, 756 (Fla.2001). The standard of review is abuse of discretion. Id. at 755-56.
There appears to be no dispute that the special instruction was supported by the evidence. In regard to whether the special instruction was a correct statement of law, we agree that the cases Garrido relies on, Stewart v. State, 672 So.2d 865 (Fla. 2d DCA 1996), and Rivero v. State, 871 So.2d 953 (Fla. 3d DCA 2004), hold that merely displaying a gun without firing it does not constitute deadly force as a matter of law. However, neither Stewart nor Rivero considered the issue of giving a special instruction.
Garrido argues that without the special instruction, the jury may have been confused by the standard instruction on non-deadly force since the jury was also required to consider whether Garrido used a deadly weapon and whether a firearm is a deadly weapon as part of the aggravated assault instruction. Specifically, the jury was instructed that, as one of the elements of aggravated assault with a deadly weapon, they needed to find the assault was made with a deadly weapon. “Deadly weapon” is defined as “[a] weapon ... if it is used or threatened to be used in a way likely to produce death or great bodily harm.” As part of the justifiable use of force instruction, the jury was also instructed that “[njondeadly force means force not likely to cause death or great bodily harm.”
Further, Garrido argues that jury questions submitted during deliberation demonstrate the jury was confused. During deliberations, the jury asked two questions: (1) “Is an unloaded gun a deadly weapon?”; and (2) “Question, likely to produce death. Does this phrase mean the weapon used at the time must be capable of producing death or is the threat of thinking it is capable sufficient?” In response to the first question, Garrido reiterated his request to read special instruction 3. The trial court instead decided to reread the entire instruction on aggravated assault to answer both questions.
We find that the standard instruction on non-deadly force adequately covered Gar-rido’s theory of defense. If the jury was confused, it was not regarding whether Garrido’s actions constituted non-deadly force, but whether an unloaded gun, not capable of inflicting deadly force, could nevertheless be considered a deadly weapon. It can. See Nash v. State, 374 So.2d 1090 (Fla. 4th DCA 1979); Humphries v. State, 232 So.2d 23 (Fla. 1st DCA 1970)
If the trial court had read Garrido’s special instruction 3, it would not have *298 resolved this confusion. Instead, the special instruction may have misled the jury into believing that aggravated assault could not be committed with an unloaded gun. The standard instruction on non-deadly force clearly permits a jury to find that merely pointing a firearm was not deadly force since pointing a gun would “not [be] likely to cause death or great bodily harm.” The trial court did not abuse its discretion in denying the special instruction.

Judgment of Acquittal

Finally, Garrido argues that he was entitled to judgment of acquittal as a matter of law on grounds that R.D. became a trespasser when Garrido ordered him to leave and R.D. refused. At that point, Garrido argues that he was entitled to use non-deadly force to terminate the trespass.
As noted by both parties, the standard of review for the denial of a judgment of acquittal is de novo. Williams v. State, 59 So.3d 373, 375 (Fla. 4th DCA 2011) (quoting Pagan v. State, 830 So.2d 792, 803 (Fla.2002)). Further, “[i]f after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.” Id.
Viewing the evidence in the light most favorable to the State, R.D. was serving process, was not trespassing on Garrido’s property, and there was no need to use non-deadly force to terminate a trespass. Even if Garrido believed that he needed to display his firearm because R.D. was not a process server and felt threatened, determining if that belief was reasonable is a jury question. Geffkin v. State, 820 So.2d 331, 335 (Fla. 4th DCA 2002) (“questions of reasonable belief and amount of force necessary for protection were questions for the jury”). Therefore, the trial court did not err in denying judgment of acquittal on this ground.

Conclusion

Since the trial court committed fundamental error in reading the standard jury instruction on justifiable use of non-deadly force in defense of self, we reverse and remand for a new trial.

Reversed and remanded for a new trial.

WARNER and STEVENSON, JJ„ concur.

. Section 776.031, Florida Statutes, provides:
A person is justified in the use of force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to prevent or terminate the other’s trespass on, or other tortious or criminal interference with, either real property other than a dwelling or personal property, lawfully in his or her possession or in the possession of another who is a member of his or her immediate family or household or of a person whose property he or she has a legal duty to protect. However, the person is justified in the use of deadly force only if he or she reasonably believes that such force is necessary to prevent the imminent commission of a forcible felony. A person does not have a
duty to retreat if the person is in a place where he or she has a right to be.
§ 776.031, Fla. Stat. (2010) (emphasis added).

. Section 776.013(5), Florida Statutes, provides:
As used in this section, the term:
(a) "Dwelling” means a building or conveyance of any kind, including any attached porch, whether the building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it, including a tent, and is designed to be occupied by people lodging therein at night.
(b) "Residence” means a dwelling in which a person resides either temporarily or permanently or is visiting as an invited guest.
§ 776.013(5), Fla. Stat. (2010).

. At trial and on appeal, Garrido made no argument he was seeking a common law use-of-force instruction.