LAWSON, C.J.
Kenneth Earl Jackson appeals the judgment and sentence imposed by the trial court after his conviction, by a jury, of. battery and aggravated assault with a firearm. Jackson argues fundamental error as to three jury instruction issues relating to his sole defense of self-defense; fundamental error in two misstatements of law during the prosecutor’s closing argument, also relating to the self-defense issue; and, ineffective assistance of counsel for failing to request a use of deadly force self-defense instruction. Although the State concedes errors in the jury instructions and the prosecutor’s closing statement (but not with respect to the last issue, arguing instead that trial counsel might have a reasonable explanation for her apparent error), it also argues that none of the admitted errors rise to the level of fundamental error. While any one of these errors, in isolation, might not warrant relief, we réadily conclude that the. combination of errors was significant enough to undermine confidence in the *445 trial’s outcome, at- its foundation. See Barnett v. State, 121 So.3d 643, 647 (Fla. 4th DCA 2013) (“Courts must analyse the totality of the record to determine -if an errant instruction is fundamental error.” (quoting Dempsey v. State, 72 So.3d 258, 261 (Fla. 4th DCA 2011))); Jassan v. State, 749 So.2d 511, 512 (Fla. 2d DCA 1999) (“A fundamental error is' one that underminés the confidence in the trial outcome and goes to the very foundation of a case. Often, it is the equivalent of a denial of due process.” (citing Hopkins v. State, 632 So.2d 1372, 1374 (Fla.1994))). We will briefly outline the errors to aid the parties and the trial court on remand.
To give context, Jackson was originally charged with aggravated battery and aggravated assault. The State alleged that Jackson struck the victim with a small handgun in the face or head (the battery) and pointed the gun at the victim (the assault). Jackson admitted the conduct, but claimed that he acted in self-defense after the alleged victim, Mordechai Sayg-yaya, attacked him. The incident occurred in Jackson’s, apartment, which was solely occupied by Jackson and Saygyaya at the time of the, incident. Saygyaya testified that he did not attack Jackson or threaten Jackson in any-way before Jackson assaulted and.battered him. Although the battery caused a surface laceration, which bled profusely, Saygyaya did not need or seek medical attention-and the parties agreed, at trial (in discussions outside the presence of the jury) that Saygyaya did not suffer “great bodily harm.”
Jackson’s trial counsel décided not to request an instruction on.-the use of deadly force in self-defense based upon the State’s concession that Saygyaya did not suffer “great bodily harm.” The problem with this decision is that it was still possible that the jury.might have, determined that Jackson used deadly, force by striking Saygyaya in the head with the gun. See Cruz v. State, 971 So.2d 178, 182 (Fla. 5th DCA 2007) (citing DeLuge v. State, 710 So.2d 83, 83-84 (Fla. 5th DCA 1998)); Dawson v. State, 338 So.2d 242, 243 n. 2 (Fla. 3d DCA 1976) (“We note that a gun may be used as a club, stick or bludgeon, and thus is a deadly weapon in this capacity as well as in discharging, bullets.” (citing Wade v. Wainwright, 266 So.2d 378 (Fla.4th DCA 1972))),[1] And, the prosecutor argued to the -jury that it should find Jackson’s, .striking of Saygyaya, with the firearm, to be deadly force. . If Jackson’s counsel believed that the force used in the attack was so minimal that it could not constitute deadly force as a matter of law, she should have objected -to this argument or otherwise sought a legal ruljng on the issue before foregoing the jury instruction. On appeal,: however, both parties agree that this portion of the prosecutor’s argument was not improper because they agree that the level of forceused by Jackson, when striking Saygyaya with the gun, was a jury question.
The. problem (of no deadly force instruction) was further exacerbated by the first admitted error in the prosecutor’s argument. That is, the prosecutor also told the jury that Jackson use.d deadly force in *446 the assault by pointing the gun at Saygya-ya. Although - this probably sounded correct to a lay jury, both parties agree that it was a misstatement of law — because the mere display of a gun, or even pointing a gun at another’s head or heart without firing it, is not deadly force as a matter of law. See Cunningham v. State, 159 So.3d 275, 277-78 (Fla. 4th DCA 2015) (citing Carter v. State, 115 So.3d 1031, 1037 n. 3 (Fla. 4th DCA 2013)); Rivero v. State, 871 So.2d 953, 954 (Fla. 3d DCA 2004) (“The use-of-force statute looks to the amount of force which is actually used. Pointing a firearm (without firing it) amounts to the use of nondeadly force.” (emphasis omitted) (citing Stewart v. State, 672 So.2d 865, 868 (Fla. 2d DCA 1996))). Jackson’s counsel did not object to this misstatement of law, and it was not corrected by any jury instruction. ' So, with respect to the assault charge, the prosecutor’s error very likely misled the jury into believing that Jackson used deadly force.’ And', with ño use of deadly force self-defense instruction given, the 'jury’ could have also concluded that Jackson’s use of deadly force could not be excused as self-defense under any circumstance — thereby depriving Jackson of his sole defense to the charge.
Further compounding the problem was the wording of one of the paragraphs in the standard instruction on the use of nondeadly force in self-defense, which incorporated the language in section 776.013(3), Florida Statutes (2012), concerning circumstances when there is no duty to retreat before using deadly force. This error has béen thoroughly explained in Neal v. State, 169 So.3d 158, 164 (Fla. 4th DCA 2015), Martin v. State, 154 So.3d 1161 (Fla. 2d DCA 2015), Sims v. State, 140 So.3d 1000, 1005 n. 7 (Fla. 1st DCA 2014), Rangel v. State, 132 So.3d 844, 847-48 (Fla. 2d DCA 2013), and Talley v. State, 106 So.3d 1015, 1017-18 (Fla. 2d DCA 2013). In summary, this error results in an instruction explaining to the jury that “a defendant has no duty to retreat and has the right to-stand his ground and meet force with force only if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.” Talley, 106 So.3d at 1017. This error was further exacerbated by the other admitted error in the prosecutor’s closing statement- where, without objection, the prosecutor quoted the erroneous portion of the instruction verbatim and commented:
Ladies and Gentlemen, there was absolutely no testimony here that, at any point in time, did the defendant feel that the — that the victim’s actions would cause death or great bodily harm. Quite the opposite. Mr. Saygyaya had told you that he had no weapons, he had no guns; he had nothing. He had nothing that would cause death or great bodily harm to defendant.
The prosecutor’s express reliance on the erroneous 'jury instruction 'imported the standard for using deadly force into the instruction on nondeadly force, and increased the likelihood that the jury would conclude that Jackson was not justified in using any force against Saygyaya unless Jackson thought' that he’was being threatened with deadly force.
Next, the standard jury instruction on the justifiable use of nondeadly force given to the jury in this case contained a section stating, “[a]n issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which Kenneth Jackson is charged if the injury to Mordechai Saygyaya resulted from the justifiable use of non-deadly force.” (emphasis added). Although Sayg-yaya did suffer an, injury in connection with the battery charge, injury was not an *447 element of either crime — and, there was no injury related to the assault offense. Moreover, the jury was correctly instructed that:
A separate crime is charged in each count of the information and,,, although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as t<? each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.
Particularly in light of this instruction, use of the word “injury” could have negated Jackson’s defense,! at least relating to the assault charge, by misleading the jury into concluding that self-defense only applied if the victim suffered an injury. Cf. Alexander v. State, 121 So.3d 1185, 1189 (Fla. 1st DCA 2013) (finding fundamental error in the inclusion of the words “the injury” in the self-defense-jury instruction in an aggravated assault casé where the defendant fired a warning shot); Garrido v. State, 97 So.3d 291, 294-95 (Fla. 4th DCA 2012) (holding that it was fundamental error to include the word “injury” in the justifiable use of nondeadly force jury instruction in an aggravated assault case where there was no injury to the victim); Brown v. State, 59 So.3d 1217, 1218 (Fla. 4th DCA 2011) (determining that it was fundamental error to include the word “injury” in the justifiable use of nondeadly force jury instruction in a battery on a law enforcement officer case where the officer was not injured); Bassallo v. State, 46 So.3d 1205, 1210-11 (Fla. 4th DCA 2010) (finding fundamental error where the word “injury” was included in the justifiable use of non-deadly force jury instruction where the charge was aggravated assault with a deadly weapon and there was no evidence presented that the victim was injured). This was also a “standard” instruction.[2]
Finally, Jackson argues that that inclusion of the word “proved” in the justifiable use of nondeadly force (standard) jury instruction was fundamental error because it effectively negated his sole defense of self-defense by shifting the burden of proof from the State to Jackson. The State argues that the word “proved” does not shift the burden of proof to Jackson and that the instructions as a whole are clear that the burden of proof remains on the State when self-defense is asserted. As to this issue, we agree with the State. The word “proved” in this case was used in a similar manner, in the same context, in the case of Woods v. State, 95 So.3d 925, 928 (Fla. 5th DCA 2012), in which we rejected a similar fundamental error argument. In both cases, the words were used in the passive tense, did not direct that the defendant had to prove anything and, standing alone, did not imply that the defendant had to prove that he acted in self-defense beyond a reasonable doubt. Still, it is worth repeating that a jury instruction that shifts the burden of proof to the defendant to prove beyond a reasonable *448 doubt'that he or she acted in self-defense, when this is the defendant’s sole defense, is fundamental error. Alvarado v. State, 98 So.3d 80, 81 (Fla. 5th DCA 2012) (citing Montijo v. State, 61 So.3d 424, 427 (Fla. 5th DCA 2011)); Fields v. State, 988 So.2d 1185, 1190 (Fla. 5th DCA 2008); Novak v. State, 974 So.2d 520, 522 (Fla. 4th DCA 2008); Murray v. State, 937 So.2d 277, 282 (Fla. 4th DCA 2006). As such, trial courts must be cognizant of this issue as well, when crafting self-defense jury instructions from the standard instructions.
REVERSED AND REMANDED FOR A NEW TRIAL.
SAWAYA and EDWARDS, JJ., concur.

. We note that in Michel v. State, 989 So.2d 679, 680-82 (Fla. 4th DCA 2008), the Fourth District Court of Appeal did find ineffective assistance of counsel apparent on the face of the record, in a direct appeal, based upon trial counsel's failure to request a use of non-deadly force jury instruction when it was supported by the evidence. The' Fourth District explained: "When the evidence presented at trial for battery does not establish, as a matter of law, whether the force used by the defendant was deadly or non-deadly, the question is a factual one to be decided by the jury, and the defendant is entitled to jury instructions on the justifiable use of bbth types of force.” Id. at 681.

. It is surely frustrating, for both trial courts and appellate judges, that the standard jury instructions relating to self-defense have so many potential pitfalls. "However, the use of the standard jury instructions does not relieve the trial court of its obligation to determine whether the standard instructions accurately and adequately state the law.” Brown v. State, 11 So.3d 428, 432 (Fla. 2d DCA 2009) (citing Moody v. State, 359 So.2d 557, 560 (Fla. 4th DCA 1978)); accord Harvey v. State, 448 So.2d 578, 580-81 (Fla. 5th DCA 1984) ("Unfortunately, trial attorneys and trial judges often fail to recognize that instructions promulgated by a Supreme Court Committee on Standard Jury Instructions, whether criminal or civil, are merely the work product of a conscientious committee and not immutable postulates from Olympus. Committees, after all, sometimes construct camels rather than race horses.”)