DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JAMES GENTRY,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-787

[July 22, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Usan, Judge; L.T. Case No. 12005038CF10A.

Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

James Gentry appeals his life sentence for one count of first degree murder. We write to address Gentry's claim that the trial court committed fundamental error by precluding him from testifying about his brother's confession. We hold that no fundamental error occurred as a result of the trial court sustaining the state's hearsay objection to Gentry's testimony concerning his brother's inculpatory out-of-court statements. We affirm.

At trial, the state contended that appellant, an admitted male prostitute, and his brother, Timothy Gentry, went home with the victim after meeting him at a gay bar. The victim refused to pay appellant for prostitution services rendered and told the brothers they had to leave. In response, appellant bound the victim's arms and legs, placed a cloth gag over the victim's mouth, took some of the victim's possessions, and left the victim in a position that ultimately caused him to die from asphyxiation, in what the medical examiner described as a "protracted very long death."

*The Trial Testimony of Timothy Gentry*

The state's primary witness at trial was appellant's brother and codefendant, Tim Gentry. The brother admitted to being a convicted felon and was incarcerated at the time of trial. The brother stated that he had resolved the first degree murder charge against him in this case. As part of his deal with the state, he pled guilty to the crime of second degree murder and was required to testify at appellant's trial. On the murder charge, he was sentenced to ten years in prison to be served concurrently with a twenty-year term of probation. The brother indicated that one condition of his plea agreement was that the state would waive the death penalty for appellant.

The brother testified that he and appellant drifted to Florida to look for work. On December 20, 2008, he and appellant, who both worked in construction, were preparing to sleep in their car in a Home Depot parking lot in order to obtain work in the morning. Immigration officers appeared at the parking lot, and everyone in the parking lot ran off.

Next, appellant and his brother went to a gay country western bar so that appellant, who had worked as a male prostitute, could earn money by engaging in sex acts with other men. Before the Gentrys met the victim, appellant had already left the bar with a male client and returned.

The Gentrys met the victim inside the bar around midnight. The brother said that he was looking for a place to sleep other than the car. The victim offered them both a place to stay.

At the victim's request, the brother drove the victim's car while appellant and the victim were kissing in the back seat. They picked up food from a Taco Bell drive-through and returned to the bar. The victim got out of the back seat and told the brother to follow him separately in his own car.

At the victim's apartment, the victim made the brother a sandwich and gave him a Coke and some aspirin. The victim and appellant entered the bathroom; the brother did not know what they were doing, but he heard the water start. The brother smoked a cigarette on the patio and then came back inside where he fell asleep on the victim's couch.

The brother testified that appellant woke him by kicking the side of the couch. The brother got up and followed appellant to the bedroom, where the victim was sitting on the edge of the bed. Appellant put the victim in a bear hug with his legs around the victim's waist and his arms around the victim's shoulders. The victim told the brothers that they would have to leave because he had other plans for the morning.

2

Appellant tightened his grip on the victim and stated that they were not leaving unless he got paid "for what [he] did for [him]." The victim said he had only a few dollars to give him. Appellant became upset.

Appellant demanded credit card numbers from the victim, without success. After the victim hit appellant in the face, appellant put the victim in a "sleeper hold" until the victim fell unconscious. Appellant pulled a phone cord out of the wall and tied the victim up. He put a belt around the victim's ankles. The brother grabbed a comforter or a blanket and propped it underneath the victim to keep him on his side. At some point, appellant put "a sock or something" around the victim's mouth.

Appellant ransacked the victim's closet and piled clothes on the brother, who took several trips to transport them to the car. When the brother left the apartment, the victim lay on his side.

The brother left the apartment complex in his car. Appellant left in the victim's car. They met back at the bar and decided to dump the victim's car nearby. They left in the brother's car, bound for Las Vegas.

The brother stated he believed that the victim would be discovered the next morning. He said that there never was an intent to kill the victim.

*Appellant's Trial Testimony*

The defense theory of the case was that the death was caused by the grossly reckless conduct of the brother. In his opening statement, the defense attorney laid the groundwork to argue that Timothy Gentry was responsible for the murder:

> The death of [the victim] was not a premeditated intent to kill. But it was the result of grossly reckless conduct. **It wasn't conduct perpetrated by James Gentry**.
>
> ***
>
> It's not until after they left and they are on the road and up the road that Tim has a few drinks in him and he proceeds to tell him, tell James, what happened. He went over to [the victim's] apartment. [The victim] wanted to have sex with him. He got angry. . . . [The victim] told him okay you've got to leave, I got people coming over and **Tim and [the victim] got into it and Tim tied [the victim] up**.

3

***

> Then it's later in this journey afterwards that **Tim fesses up that he left . . . he robbed [the victim], left him tied up, took his car and came back and ditched it near the gay bar**.
>
> And Tim, as he said, didn't intend to kill [the victim]. It was a consequence of a grossly negligent act.

***

> I want you to listen to James' testimony, see if it rings true. Ms. Johnson's going to have an opportunity to cross-examine him. She may play some additional phone calls. And after that **you're going to conclude that James Gentry did not kill [the victim]. That the person that killed [the victim], albeit unintentionally through a grossly reckless act was Timothy Gentry**.

(Emphases supplied).

Appellant testified at trial. He said that in December 2008 the two brothers decided to come to Florida for work. A potential place to stay in Boca Raton fell through. Appellant suggested that they hit some clubs before going to Orlando to earn money there.

On December 20, 2008, the brothers went to a gay bar for appellant to engage sex partners for money. Appellant said he was a male prostitute who sought out older men who would pay him for sex. Appellant met the victim at the bar and agreed to engage in oral sex for $100. He and the victim left the bar and got into the back seat of appellant's car, where they engaged in oral sex. Appellant testified that the victim put his fingers in appellant's anus, which defense counsel used to explain appellant's DNA under the victim's fingernails.

After appellant ejaculated, he and the victim returned to the bar, where appellant introduced the victim to his brother. Appellant had a drink with them and then "went back to work" to find his next client.

Appellant insisted that he did not see his brother for the rest of the night. Appellant went outside with two different clients and performed sex acts on them for money. During those incidents, he saw his brother's car

4

in the parking lot, but not his brother. In the early morning hours, his brother appeared. Because business at the bar was slow, the two brothers left in the brother's car for Orlando.

Defense counsel sought to elicit testimony that, on the drive to Orlando, the brother confessed to appellant that he was responsible for the victim's death:

> Q: Okay. Does there come a point in time when Tim tells you where he had been and what he had done?
>
> A: Yes.
>
> Q: Where was that and under what circumstances?
>
> A: That was on the trip to Orlando.
>
> Q: Okay. Was he drinking?
>
> A: Yes.
>
> Q: What does he tell you happened?
>
> A: He tells me that he was flirting with [the victim]. And [the victim] had offered him a place to stay.
>
> Q: Okay.
>
> A: So when he left with [the victim], they got to his house, [the victim] wanted to do more than just give him a place to stay.
>
> Q: Then what happened, what did he tell you happened?
>
> A: He said he got angry at [the victim] and, I guess, [the victim] was angry at him.

At this point, the state asserted a hearsay objection, which the trial court sustained.

At a sidebar conference, defense counsel argued that testimony regarding the brother's confession was admissible as a declaration against his penal interest. The court sustained the hearsay objection. The court

5

allowed defense counsel to proffer the following testimony regarding the alleged confession:

> Q: Did your b[r]other confession (sic) to you?
>
> A: Yes.
>
> Q: Tell this Court, just for the record what your brother confessed to you, what he said he did?
>
> A: He told me that he went to [the victim]'s house to sleep. [The victim] wanted to mess around, Tim did not. He wanted to sleep. He said [the victim] was upset and asked him to leave. And Tim decided he was, I guess, stranded and he didn't know what else to do. So he tied [the victim] up, took his car. And that's pretty much it.

Although appellant was unable to tell the jury these specifics about his brother's confession, he did tell the jury that after having a conversation with his brother in the car, he was concerned that he was assisting Tim in committing a crime.

### *The trial court committed no fundamental error in sustaining the state's hearsay objection to appellant's testimony concerning his brother's confession*

The trial court properly sustained the state's objection to appellant's testimony concerning his brother's confession. The testimony was not a statement against interest pursuant to 90.804(2)(c), Florida Statutes (2019), because the brother was not "unavailable as a witness"; the brother testified at trial. Nor was the statement an admission "offered against a party" under section 90.803(18), because the brother was not a "party" in the trial.

On appeal, appellant argues that the court's ruling violated his right to procedural due process under *Chambers v. Mississippi*, 410 U.S. 284 (1973). Appellant did not raise this objection at trial, so he did not preserve this issue for appeal. In *Hill v. State*, the Florida Supreme Court held that a failure to timely raise a "constitutional argument grounded on due process and *Chambers*" in the trial court "procedurally bars appellant from presenting the argument on appeal." 549 So. 2d 179, 182 (Fla. 1989). This means that we may properly review this issue only for "fundamental error."

6

"Fundamental error is error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Krause v. State*, 98 So. 3d 71, 73 (Fla. 4th DCA 2012) (quoting *Bassallo v. State,* 46 So. 3d 1205, 1209 (Fla. 4th DCA 2010)).

We do not address the merits of the *Chambers* argument because we conclude that, assuming the trial court's ruling was incorrect, no fundamental error occurred on this record.

First, appellant's brother—the declarant in the excluded testimony—testified at trial and was available to be fully cross-examined on his role in the murder. Had the defense attorney laid the proper foundation during his cross-examination of the brother, the omitted statements could have been admitted into evidence as prior inconsistent statements pursuant to section 90.608(1), Florida Statutes (2019).

Second, based on the evidence that was admitted at trial, the defense attorney effectively presented the defense theory that the brother was solely responsible for the murder. In his opening statement quoted above, the attorney laid the groundwork for the defense theory that Timothy Gentry had committed the murder without appellant's help. During his closing argument, the attorney hammered on inconsistencies between the brother's testimony and the physical evidence from the crime scene. He argued that the brother was the guilty party:

> Now, we know from Tim's testimony complaining about his back. He was tired and wanted a place to go. So he teams up . . . Tim teams up with [the victim] . . . and they go to his house in Tamarac. **And that is the only person that's at the house in Tamarac. Not James, only Tim**. Now, I'll discuss with you the forensic evidence that says why. And then at some point later, according to James, some point later Tim shows back up at the bar.

> \*\*\*

> So they go to Orlando. It's on the way to Orlando that James has a conversation with Tim. And after that conversation, after that conversation you heard him answer the question, were you concerned after you had that conversation. Yes. What were you concerned about? **I was concerned about aiding and assisting Tim in escaping for avoiding apprehension for a crime**.

7

**\*\*\***

So I'm going to conclude and I'm going to leave you with this, with this. Finding James Gentry not guilty leaves you with the knowledge, with the knowledge that **the man that committed this crime, Timothy Gentry, is in prison so justice has been served. Because the man that committed this crime is in prison**.

(Emphases supplied). If the jury disbelieved appellant's story that he was in the bar all night and never entered the victim's apartment, it is highly unlikely that they would have bought into the defense theory had they heard appellant say that his brother admitted to tying the victim up and leaving the apartment. The missing testimony was not the linchpin for a not guilty verdict.

We have considered the argument raised concerning the admission of recordings of jail calls between appellant and his girlfriend. We find no abuse of discretion in the trial court's ruling that the calls were relevant and not unfairly prejudicial.

*Affirmed.*

WARNER and GERBER, JJ., concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***